The Circuit Court of Russell County permanently enjoined the appellant, Congress Finance Corporation, from executing on a judgment or selling a 1977 Dodge van at a sheriff's sale. The trial court ordered the sheriff to release the van to the custody of the appellee, Kenneth Funderburk. Congress Finance appeals and we reverse.
A review of the record reveals the following pertinent facts. Diane Funderburk, sister-in-law of the appellee, stated that she bought the 1977 Dodge van from a private individual in the summer of 1976. Diane's husband, the appellee's brother, testified that Diane bought the van in May or June of 1977. Diane financed the van through the First Alabama Bank. Diane's promissory note with First Alabama Bank dated July 11, 1977, was admitted into evidence. A certificate of title issued to Diane shows the date of purchase to be July 11, 1977 with First Alabama Bank as the sole lienholder. First Alabama Bank retained possession of the certificate of title.
The appellee testified he bought the van from his sister-in-law, Diane, and gave her a bill of sale on July 1, 1977. The bill of sale states the van was subject to the above referenced lien with First Alabama Bank.
Diane never endorsed or gave the appellee a certificate of title. An officer from First Alabama Bank stated that no one ever requested the certificate of title be changed to show a new owner. A 1982 tag receipt showed Diane to be the registered owner of the van, although Diane's husband signed the receipt as applicant for the tag.
In December, 1977, Diane filled out a loan application with appellant Congress Finance. In this application, Diane stated that she was the owner of a 1977 Dodge van financed through First Alabama Bank. After verifying this information with First Alabama Bank, Congress Finance loaned Diane $700 and took a security interest in some miscellaneous household goods.
When Diane defaulted on the $700 loan, Congress Finance obtained a judgment against her in July, 1978. In June, 1981, an execution was issued against the Dodge van that Diane had listed on her loan application with Congress Finance.
The appellee petitioned the trial court to enjoin the sheriff's sale. The appellee alleged in his petition that he had purchased the van from Diane on July 1, 1977 and that the van had been used by the appellee and his brother in the appellee's business. In requesting the injunction, the appellee alleged that Diane's debt with and the judgment in favor of Congress Finance had arisen after Diane had sold the van to the appellee. Since Diane no longer owned the van, the appellee contended in his petition that Congress Finance could not execute on the van.
The trial court held an ore tenus hearing to consider the appellee's petition for injunctive relief. After the hearing, as indicated, the trial court entered an order permanently *Page 1061 
enjoining Congress Finance from executing on or selling the van.
On appeal, Congress Finance contends that the trial court erred in ordering the injunction.
Congress Finance first argues that the trial court erred as a matter of law in finding that Diane did not own the van. Specifically, Congress Finance contends that a certificate of title to a vehicle must be transferred in compliance with section 32-8-44, Code of Ala. 1975, for the sale to be valid against third parties. Since there had been no transfer of title to the appellee, Congress Finance contends that Diane, rather than the appellee, was the owner of the van.
Congress Finance's second contention is that the trial court's finding that Diane was not the owner of the van was against the great weight and sufficiency of the evidence.
The Alabama legislature enacted the Uniform Certificate of Title and Anti-theft Act in 1973. §§ 32-8-1 to -87, Code of Alabama 1975. One purpose of the act is to frustrate the possession and disposition of stolen motor vehicles in the state. State v. Spurlock, 393 So.2d 1052 (Ala.Cr.App. 1981). The act also provides a means for interested parties to ascertain essential information concerning title to vehicles.See Nationwide Insurance Co. v. Bank of Forest, Forest,Mississippi, 368 So.2d 1273 (Miss. 1979).
The general provision governing the transfer of motor vehicles, section 32-8-44, provides:
 (a) [I]f an owner transfers his interest in a vehicle, other than by the creation of a security interest, he shall, at the time of the delivery of the vehicle, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate or as the department prescribes, and cause the certificate and assignment to be mailed or delivered to the transferee or to the department.
 (b) Except as provided in this section, the transferee shall, promptly after delivery to him of the vehicle, execute the application for a new certificate of title in the space provided therefor on the certificate or as the department prescribes, and cause the certificate and application to be mailed or delivered to a designated agent.
 (c) Upon request of the owner or transferee, a lienholder in possession of the certificate of title shall, unless the transfer was a breach of his security agreement, deliver the certificate to the transferee. Upon receipt of the certificate the transferee shall make application to a designated agent for a new certificate. The delivery of the certificate does not affect the rights of the lienholder under his security agreement.
 (d) If a security interest is reserved or created at the time of the transfer, the certificate of title shall be retained by or delivered to the person who becomes the lienholder and the parties shall comply with the provisions of section 32-8-62.
 (e) Except as provided in section 32-8-45, and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with.
The Alabama Certificate of Title Act is only applicable to 1975 model year vehicles and all models subsequent thereto. §32-8-30, Code of Ala. 1975;
Eleven Automobiles v. State ex rel. Graddick, 384 So.2d 1129
(Ala.Civ.App. 1980). The 1977 Dodge van involved in the instant action falls within the purview of this legislation.
We cannot agree with Congress Finance's initial contention that the appellee's failure to effectuate a transfer of the certificate of title in accordance with section 32-8-44
rendered the sale void.
There are no Alabama cases interpreting section 32-8-44
stating that the failure to comply with the statute precludes a buyer from asserting title against a third party such as Congress Finance.
In other jurisdictions with statutes substantially similar to our own, we can find no decisions to support Congress Finance's *Page 1062 
contention that noncompliance with the statute renders the transfer of a vehicle void as to third parties. Uniform Motor Vehicle Certificate of Title and Anti-Theft Act § 14, 11 U.L.A. 441 (1955). The trial court in this action under these facts was not required to find, as a matter of law, that Diane still owned the van even though the certificate of title was still in Diane's name.
We find, therefore, that section 32-8-44 does not provide an exclusive method of transferring ownership. For example, non-delivery of a certificate of title does not prevent, as between the parties, the passage of title from the seller to the buyer. Wood Chevrolet Company v. Bank of the Southeast,352 So.2d 1350 (Ala. 1977). Likewise, depending upon the circumstances, it appears that a transfer may be effective as to third parties, such as Congress Finance, notwithstanding the parties' failure to transfer the certificate of title. See,e.g., Matter of Emergency Beacon Corp., 665 F.2d 36 (2d Cir. 1981). To hold otherwise would, in effect, render a certificate of title the absolute evidence of ownership regardless of the circumstances. The statute does not mandate such a conclusion.
We agree, however, with Congress Finance's second contention that the trial court's findings were against the great weight and sufficiency of the evidence. In a majority of jurisdictions with some form of a motor vehicle title act, a certificate of title establishes prima facie title in the person whose name appears on the certificate. 14 Blashfield Automobile Law and Practice § 467.54 (3d ed. 1969).
The certificate of title to the Dodge van in the instant case remained in Diane's name. Therefore, the burden was on the appellee to rebut the prima facie evidence established by the certificate of title indicating that Diane was still the owner of the van. § 32-8-39 (d), Code of Ala. 1975. See GovernmentEmployees Insurance Co. v. Fulmer, 376 So.2d 748 (Ala.Civ.App. 1979).
We find the appellee did not adequately meet his burden of contradicting the prima facie evidence of ownership remaining in Diane. The appellee merely produced a bill of sale and a 1982 tag receipt signed by the appellee's brother, but which still listed Diane as the registered owner. The only other evidence supporting the appellee's claim was his testimony, along with the testimony of the appellee's brother and Diane, that the appellee had bought the van on July 1, 1977.
In City Car Sales, Inc. v. McAlpin, 380 So.2d 865
(Ala.Civ.App. 1979), cert. denied, 380 So.2d 869 (Ala. 1980), we held that a bill of sale and a license registration would not contradict a valid certificate of title. Similarly, under the facts before us on appeal, it does not appear that the bill of sale, the tag receipt, and the testimony of the appellee and his witnesses contradict the prima facie evidence established by the certificate of title showing Diane to be the owner of the van.
We further note that the prima facie evidence of title remaining in Diane is bolstered by other evidence presented at trial by Congress Finance. Diane was the registered owner listed on the 1982 application for a license tag. Diane was listed as the named insured on a notice for reinstatement for automobile insurance on the van in 1979. A witness from First Alabama Bank testified that Diane personally made payments on the van during 1981.
We find on the instant facts that the trial court erred to reversal in determining that Diane was not the owner of the van. Put another way, the trial court's finding that Diane was no longer the owner of the van was against the great weight and sufficiency of the evidence.
Accordingly, we reverse the learned trial judge's order enjoining Congress Finance from executing on or selling the 1977 Dodge van.
This case is due to be reversed and remanded for entry of a judgment not inconsistent with the foregoing.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur. *Page 1063